John D. Fiero (CA Bar No. 136557)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:    (415) 263-7000
Facsimile:    (415) 263-7010
E-mail:        jfiero@pszjlaw.com
              dgrassgreen@pszjlaw.com
              jlucas@pszjlaw.com
              jrosell@pszjlaw.com

Proposed Counsel for Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 15-31141-HB |
| NEWZOOM, INC.,[1] | Chapter 11 |
| Debtor. | **MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF FTI CONSULTING INC. TO PROVIDE ANDREW HINKELMAN AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR AND TO ASSIST THE CRO, NUNC PRO TUNC TO THE PETITION DATE** |
| | [PER L.B.R. 9014-1(B)(3), NO HEARING REQUESTED] |

**TO:    THE HONORABLE HANNAH L. BLUMENSTIEL,**
       **UNITED STATES BANKRUPTCY JUDGE AND PARTIES IN INTEREST:**

NewZoom, Inc., the above-captioned debtor and debtor in possession (the "Debtor") hereby files this motion (the "Motion") for the entry of an order approving the letter agreement dated September 8, 2015 (the "Engagement Contract"), annexed hereto as Exhibit A, by and between the Debtor and FTI Consulting, Inc. ("FTI", or the "Firm"), *nunc pro tunc* to the commencement of this case. Pursuant to the Engagement Contract, Andrew Hinkelman ("Mr. Hinkelman") will serve as Chief Restructuring Officer ("CRO"), and additional individuals (the "Additional Personnel") will

---

[1] The last four digits of the Debtor's tax identification number are 9130. The location of the Debtor's headquarters and service address is 22 Fourth Street, San Francisco, CA 94103.

provide other services to the Debtor in support of the CRO. In support of this Motion, the Debtor submits the declaration of Andrew Hinkelman (the "<u>Hinkelman Declaration</u>") annexed hereto as <u>Exhibit B</u>, and further respectfully represents as follows:

**I.**

**<u>STATEMENT OF FACTS</u>**

**A.**     **<u>Jurisdiction and Venue</u>**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.**     **<u>General Background</u>**

On September 10, 2015 (the "<u>Petition Date</u>"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On September 21, 2015, the United States Trustee for the Northern District of California appointed an official committee of unsecured creditors (the "<u>Committee</u>").

A detailed discussion of the Debtor's history, description of its business, its assets and liabilities, and the events that led to its need for bankruptcy relief is set forth in the *Declaration of John A. Lawrence in Support of First Day Motions* [Docket No. 2].

**II.**

**<u>RELIEF REQUESTED</u>**

By this Motion, the Debtor requests the entry of an order, pursuant to sections 105 and 363 of the Bankruptcy Code, approving the Engagement Contract attached hereto as <u>Exhibit A</u> to the declaration of Mr. Hinkelman in support of the Motion. A copy of the Hinkelman Declaration is annexed hereto as <u>Exhibit B</u>. Pursuant to the Engagement Contract, Mr. Hinkelman will serve as CRO, and the Additional Personnel will perform other services under the Engagement Contract.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2

DOCS_LA:291816.6

The relief requested herein is necessary to the successful administration of this bankruptcy case. The Debtor seeks to retain the CRO and FTI so they may continue to provide management services and guide existing management through a restructuring of the Debtor's operations and a successful resolution of its chapter 11 case. Further, any delay of the CRO's, and FTI's services could cause irreparable harm to the Debtor's estate.

Mr. Hinkelman and FTI will assist management in evaluating strategic alternatives, managing and reporting cash flows, communicating and negotiating with the Debtor's stakeholders, and providing business plan analysis and liquidation analysis for the purpose of restructuring the estate aimed to maximize value for the estate pursuant to the terms of the Engagement Contract. Without such services, it would be difficult, if not impossible, for the Debtor to gather and analyze the financial information necessary to complete the reorganization contemplated by this filing.

## III.

## QUALIFICATIONS

**A.    Qualifications of Andrew Hinkelman as Chief Restructuring Officer**

Mr. Hinkelman is a senior managing director with FTI. Mr. Hinkelman is well-suited to provide the restructuring services required by the Debtor. Mr. Hinkelman helps operationally and financially distressed organizations in both out-of-court workouts and chapter 11 reorganizations. Mr. Hinkelman has extensive experience representing debtors and creditors in formal bankruptcy proceedings. Mr. Hinkelman's clients have included both public and private companies ranging in size from $75 million to more than $9 billion in assets and liabilities. He has experience in retail, manufacturing, hospitality, health care, high technology, distribution, professional services industries and others.

Mr. Hinkelman has been instrumental in a number of prominent restructurings, assuming various senior executive and advisory rolls on an interim basis including (a) Fairfield Residential LLC, (b) Classic Party Rentals, (c) Trident Microsystems Inc., and (d) IMRIS, Inc.

//

//

3

DOCS_LA:291816.6

**B.  Qualifications of FTI and Scope of Services of FTI and CRO**

The Debtor is familiar with the professional standing and reputation of FTI.  FTI was retained prepetition to provide restructuring services to the Debtor under the Engagement Contract. The Debtor understands that FTI has a wealth of experience in providing services in restructurings and reorganizations and enjoys an excellent reputation for services its professionals have rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

Moreover, Mr. Hinkelman and various other FTI employees have devoted substantial amounts of time and effort prepetition to, among other things, researching options relative to maximizing the enterprise value of the Debtor, advising and assisting the Debtor with respect to the potential sale of substantially all of its assets, negotiating with critical secured and unsecured creditors, developing cash flow projections, evaluating and communicating restructuring alternatives to the Debtor, and supporting the Debtor's financial department in the management of its liquidity resources.  FTI professionals have been invaluable to the Debtor throughout this process and will continue to play an instrumental role in the Debtor's restructuring efforts.

The Debtor determined prior to the Petition Date that obtaining the services of a CRO and other personnel with turnaround and chapter 11 experience will substantially enhance its ability to (a) operate and meet its administrative obligations in this bankruptcy case and (b) preserve and maximize the value of its assets for creditors.  As such, the Debtor chose to utilize FTI personnel pursuant to the Engagement Contract and appointed Mr. Hinkelman of FTI to the position of CRO prior to the Petition Date and seeks to have him maintain this role post-petition, subject to the Court granting this Motion.

Further, as a result of prepetition work performed on behalf of the Debtor, FTI has acquired significant knowledge of the Debtor and its business and is now familiar with the Debtor's financial affairs, debt structure, operations and related matters.  Likewise, in providing prepetition services to the Debtor since on or about August 6, 2015, FTI's professionals have worked closely with the Debtor's management, its financial institutions and other advisors.  Accordingly, FTI has developed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_LA:291816.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

relevant experience regarding the Debtor that will assist it in providing effective and efficient services to the Debtor in this bankruptcy case.

As such, the Debtor believes that FTI is well-qualified and able to advise it in a cost-effective, efficient and timely manner. The Debtor has been advised by FTI that it will endeavor to coordinate with the other professionals retained in this bankruptcy case to eliminate unnecessary duplication or overlap of work. Therefore, the Debtor submits that the retention and employment of FTI is in the best interests of its estate, creditors and other stakeholders in this bankruptcy case.

## IV.

## SERVICES TO BE PROVIDED

By this Motion, the Debtor seeks the entry of an order authorizing the employment of FTI to provide restructuring management services, crisis management services, and CRO services as described in the Engagement Contract (the "Services") including, but not limited to the following:

**Liquidity Forecasting**

- Evaluate and manage cash flow.
- Approve, manage, and control cash disbursements.
- Evaluate and control cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.
- Preparation and negotiation of financing budgets and related documents.

**Restructuring / Other Services**

- Assess potential EBITDA based on revenue and product line strategy and other restructuring initiatives.
- Development of go forward business and restructuring plans, including without limitation the development of a written assessment of the future prospects of the business, the related working capital needs and a recommendation of how the Company can best be restructured to realize value.
- Analyze long term capital needs to effectuate a capital raise, sale transaction, or restructuring.
- Develop working capital management tools.
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a capital raise, sale transaction, or restructuring.
- Evaluate and manage the inflows and outflows of cash.

//

DOCS_LA:291816.6

**Chapter 11 Execution Services**

- Assist Company personnel with the communications and negotiations with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.

- Lead the compilation and preparation of financial information, statements, schedules and monthly operating reports necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

- Assist the Company and its other advisors with the formulation of a chapter 11 plan of reorganization / liquidation and the preparation of the corresponding disclosure statement.

- Prepare a liquidation analysis for a reorganization plan and/or negotiation purposes.

- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.

- Provide testimony in the chapter 11 case as necessary or appropriate at the Company's request.

The Debtor agrees that FTI will provide Mr. Hinkelman to serve in the capacity of CRO. Mr. Hinkelman will continue to operate in the capacity of CRO under the protection of chapter 11 of the Bankruptcy Code. In his capacity as CRO, Mr. Hinkelman will:

- Report directly to the Board of Directors of the Debtor and make recommendations thereto and consult therewith regarding his activities and the Services as discussed above.

- Work on a collaborative basis with senior executives of the Debtor, coordinate the restructuring efforts of the Debtor, subject to the reporting structure above, including the identification, development, and implementation of strategies related to the Debtor's debt obligations, business plan, and other related matters.

- In consultation with the Debtor's senior executives, coordinate and manage the Services as discussed above and the FTI professional staff on the engagement.

To address and handle the above responsibilities on behalf of the Debtor, the CRO will be assisted by Additional Personnel provided through FTI at various levels. All such Additional Personnel will be provided under and subject to the terms of the Engagement Contract.

The Debtor will indemnify those persons serving as corporate officers pursuant to the terms of the Engagement Contact. Accordingly, as part of this Motion, the Debtor requests that the Court approve the indemnification provisions as set forth herein, as modified by the proposed order.

6

Case: 15-31141    Doc# 116    Filed: 10/08/15    Entered: 10/08/15 17:18:34    Page 6 of 36

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Notwithstanding any provisions of the Engagement Contract to the contrary, consistent with the "Jay Alix Protocol" implemented by the Office of the United States Trustee, Mr. Hinkelman and FTI agree that:

- In the event the Debtor seeks to have any of the Additional Personnel assume executive officer positions other than Mr. Hinkelman, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.
- No principal, employee, or independent contractor of FTI and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case.
- For a period of three (3) years after the conclusion of the engagement, neither FTI nor any of its affiliates will make any investments in the Debtor.

## V.

## PROFESSIONAL COMPENSATION

The Debtor and FTI have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement Contract (the "Fee Structure"):

- For the services rendered by Mr. Hinkelman and the Additional Personnel pursuant to the Engagement Contract, the Company agrees to pay FTI a monthly fee (the "Monthly Fee") of $150,000 for the 1st calendar month ending October 31, 2015, $125,000 for the 2nd calendar month, and $100,000 for the 3rd calendar month. If the services of FTI are required post the 3rd calendar month, FTI will be paid a monthly fee of $75,000 until such services are no longer required. The Monthly Fee is due and payable, in advance, on the first day of each calendar month and shall be deemed accrued and earned upon receipt. In addition to the Monthly Fee, the CRO may add additional Hourly Temporary Employees with the consent of the Company and Macquarie (in its capacity as Senior Lender) at a mutually negotiated fixed weekly rate.
- Additionally, for services rendered in connection with the preparation of the Statement of Financial Affairs, the Schedules of Assets and Liabilities and the initial operating report as required by the United States Trustee and Bankruptcy Court, the Company agrees to pay FTI a one-time fee of $75,000.
- No pre-petition retainer was paid to FTI, and no postpetition retainer is due. However, $65,000 previously held in the trust account of Pachulski Stang Ziehl & Jones LLP for professional fees was transferred to FTI shortly before the filing. The balance remaining due and owing by the Debtor to FTI – $64,771 – has been written off such that FTI was not a creditor of the Debtor upon the bankruptcy filing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

7

DOCS_LA:291816.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

In addition to the rates set forth above, the Debtor shall reimburse FTI and the CRO for all reasonable out-of-pocket expenses incurred in connection with this engagement such as travel, lodging, telephone and facsimile charges.

FTI shall file with the Court, with copies to the United States Trustee and all official committees, a monthly report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

FTI shall file with the Court (and serve copies on the United States Trustee and any official committees appointed in this case contemporaneously with such filing) reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall contain summary charts which describe services provided, identify the compensation earned by each executive officer and employee provided, and itemize the expenses incurred. Time records for the CRO and all Additional Personnel shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. When FTI personnel are providing services at an hourly rate, such personnel shall record their time entries in increments of no greater than one-half hour (0.5). All compensation shall be subject to review by the Court in the event an objection is filed. The first quarterly report will be submitted forty-five (45) days from the end of the first calendar quarter after the Petition Date and will cover the period to and including the last day of the first quarter after the Petition Date. This procedure will continue at three month intervals thereafter. Because the CRO and FTI are not being employed as a professional under section 327 of the Bankruptcy Code, they will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. The CRO and FTI will, however, submit the reports described above.

## VI.

## GENERAL DISINTERESTEDNESS OF FTI

Although the Debtor does not propose to retain the CRO and FTI under section 327 of the Bankruptcy Code, FTI has nonetheless performed a computerized conflict check and, to the best of

8

DOCS_LA:291816.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

its knowledge and except to the extent disclosed in the Hinkelman Declaration, does not hold any interest adverse to the interests of the Debtor's estate. Furthermore, by the Hinkelman Declaration, Mr. Hinkelman provides full and complete disclosure to demonstrate that FTI satisfies all requirements that would be imposed by the Bankruptcy Code and Bankruptcy Rules for employment in this case.

FTI has agreed not to share with any person or entity any compensation received by it in the Debtor's case with any non-affiliated entity. Neither FTI, nor any of its principals, employees, agents or affiliates has any connection with the Debtor, its significant creditors, the United States Trustee or any other significant party with an actual or potential interest in this bankruptcy case or their respective attorneys or accountants, except as set forth in the Hinkelman Declaration.

From time to time, FTI has provided services, and likely will continue to provide services, to certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to this bankruptcy case.

These unrelated matters involve numerous attorneys, financial advisors, and creditors, some of whom may be claimants or parties with actual or potential interests in this bankruptcy case or may represent such parties.

Additionally, in the ordinary course of its business, FTI may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors, or other interested parties in this bankruptcy case.

The Debtor maintains business relationships with numerous shareholders, lenders, creditors and other parties. FTI may have advisory or other commercial or professional relationships with such entities or persons unrelated to the Debtor or its business affairs. No such relationships are related to this bankruptcy case.

Because the Debtor is a large enterprise with numerous creditors and other relationships, FTI is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if FTI discovers additional information that requires disclosure, FTI will file a supplemental disclosure with the Court.

DOCS_LA:291816.6

FTI has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this bankruptcy case. If this Court approves the Motion, FTI will not accept any engagement or perform any services for any entity or person other than the Debtor in this bankruptcy case. FTI will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties in interest in this bankruptcy case, provided, however, that such services do not relate to, or have any direct connection with, this bankruptcy case.

The Debtor does not owe FTI any amount for services performed or expenses incurred prior to the Petition Date and thus FTI is not a prepetition creditor of the Debtor.

Accordingly, to the extent relevant, the Debtor believes that FTI is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

## VII.

## INDEMNIFICATION AND LIABILITY LIMITATION PROVISIONS

The Engagement Contract contains standard indemnification and limitation of liability language with respect to the Services. Notwithstanding any provisions of the Engagement Contract to the contrary, in accordance with the J. Alix Protocol, FTI has agreed otherwise, as set forth below.

With respect to Mr. Hinkelman in his capacity as CRO, the Debtor shall indemnify the CRO on the same terms as provided to the Debtor's directors under the Debtor's by-laws and applicable state law.

With respect to the Additional Personnel, the Debtor shall have no obligation to indemnify FTI or to provide contribution or reimbursement to FTI for any claim or expense that is either (a) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of FTI; or (b) settled prior to a judicial determination as to FTI's willful misconduct, gross negligence, bad faith or self-dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution or reimbursement under the terms of the Engagement Contract.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10

DOCS_LA:291816.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

If FTI believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification with respect to the Additional Personnel, including without limitation the advancement of defense costs, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this bankruptcy case (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing, dismissing, or converting this chapter 11 case, FTI will file an application to this Court seeking approval of such payment, and the Debtor may not pay any such amounts to FTI before the entry of an order by this Court approving the payment; *provided*, *however*, that the foregoing is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification by FTI, and is not a provision limiting the duration of the Debtor's obligation to indemnify FTI.

Finally, notwithstanding any provisions of the Engagement Contract to the contrary, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to FTI's services performed during this bankruptcy case.

## VIII.

## **BASIS FOR RELIEF**

Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law throughout the country, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on part of the debtor, such use should be approved. *See e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have applied the

11

DOCS_LA:291816.6

"sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the actions were in the best interests of the company.'").

Bankruptcy courts have analyzed the propriety of a debtor's employment of corporate restructuring officers, advisors, and professionals under section 363 on numerous occasions and have determined it is an appropriate exercise of the debtor's business judgment to employ a restructuring professional in this manner. *See In re American Suzuki Motor Corporation,* Case No. 8:12-22808-SC (Bankr. C.D. Cal. 2012); *In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan 13, 2010); *In re Motor Coach Industries International, Inc.*, Case No. 08-12136 (Bankr. D. Del Oct. 15, 2008) (approving retention of CRO and crisis managers); *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (Bankr. D. Del June 26, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del May 28, 2008); *In re Hoop Holdings, LLC*, Case No. 08-10544 (BLS) (Bankr. D. Del Apr. 22, 2008); *In re Leiner Health Products, Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 8, 2008); *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 5, 2007); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan 17, 2007).

A debtor, pursuant to section 363(b), may employ one or more professionals to act as their restructuring officers or managers or crisis officers or managers. *See In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003). The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code. Numerous courts have authorized retention of officers utilizing this provision of the Bankruptcy Code, including Courts in the Ninth Circuit. *See In re American Suzuki Motor Corporation,* Case No. 8:12-22808-SC (Bankr. C.D. Cal. 2012); *In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

12

C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan. 13, 2010); *In re The Holliston Mill, Inc.*, Case No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007); *In re Sea Containers Ltd.*, Case No. 06-11156 (KJC) (Bankr. D. Del. May 8, 2007); *In re Adva-Lite, Inc.*, Case No. 07-10264 (KJC) (Bankr. D. Del. Mar. 16, 2007); *In re Global Home Products, LLC*, Case No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006); *In re World Health Alternatives, Inc.*, Case No. 06-10166 (PJW) (Bankr. D. Del. Mar. 15, 2006).

Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). *See also United States v. Energy Resources Co.*, 495 U.S.545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 2005 WL 435207, *14 (D.N.J. Feb. 25, 2005) (reciting the power of the bankruptcy court to "… issue any order … that is necessary or appropriate to carry out the provisions of … [title 11]").

The terms and conditions of the Engagement Contract were negotiated by the Debtor and FTI at arm's length and in good faith. The Debtor submits that the employment of FTI is a sound exercise of its business judgment and satisfies section 363 of the Bankruptcy Code as FTI's services are necessary and essential to the Debtor's restructuring efforts. Mr. Hinkelman has extensive experience providing management and financial services to distressed companies. In addition, since the beginning of FTI's engagement with the Debtor on August 5, 2015, FTI, working in conjunction with the Debtor's senior management, has provided invaluable assistance in, among other things, analyzing the Debtor's overall operations and financial condition, negotiating with the Debtor's creditors and stakeholders, and coordinating the Debtor's preparation for filing this bankruptcy case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

13

Case: 15-31141   Doc# 116   Filed: 10/08/15   Entered: 10/08/15 17:18:34   Page 13 of 36

### A. Retention of FTI is Important to the Debtor's Success

Granting the relief requested herein would provide the Debtor with the assistance of a highly qualified CRO and translate into benefits to the Debtor's estate. Without Mr. Hinkelman, the Debtor would be forced to engage a new CRO who lacks an equivalently thorough understanding of the Debtor's business and restructuring initiatives – both already in progress and soon to be implemented. Further, hiring a new CRO would involve a steep learning curve, significant time and additional resources – all of which are in short supply given the brief timeframe within which the Debtor seeks to emerge from this bankruptcy case. Accordingly, the Debtor respectfully submits that the services provided by FTI are important to the success of this bankruptcy case and requests that the Court approve the Engagement Contract.

The Debtor submits that the employment of FTI and Mr. Hinkelman under the terms of the Engagement Contract would greatly benefit the Debtor's estate and creditors. The absence of executives capable of achieving a successful reorganization would severely hinder the Debtor's ability to reorganize in an efficient and effective manner.

Moreover, Mr. Hinkelman is clearly qualified for the position for which he is being employed. The Debtor has determined that the terms of the Engagement Contract are within the range of those for senior executive officers employed with the companies of comparable size, value and reputation. Accordingly, the Debtor's decision to enter into the Engagement Contract reflects an exercise of the Debtor's sound business judgment.

WHEREFORE, the Debtor respectfully requests that the Court approve the Engagement Contract *nunc pro tunc* to the Petition Date and granting such other and further relief as the Court deems appropriate under the circumstances of these bankruptcy cases.

Dated: October 8, 2015

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Jason H. Rosell*
    John D. Fiero
    Debra I. Grassgreen
    John W. Lucas
    Jason H. Rosell

Proposed Counsel for Debtor

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_LA:291816.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

**Engagement Contract**



Critical thinking at the critical time.™

One Front St Ste 1400
San Francisco, CA 94123
415.283.4214 telephone
415.283.4700 facsimile
www.fticonsulting.com

PRIVATE & CONFIDENTIAL

September 8, 2015

Mr. Jack Lawrence
President and CEO
NewZoom, Inc. dba ZoomSystems
22 Fouth Street, Floor 16
San Francisco, CA 94103

Re: ZoomSystems Engagement Letter

Dear Jack:

### 1.     **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, NewZoom, Inc. dba ZoomSystems (the "Company"), to provide the services of tempory officers and hourly employees (the "Services"). This Consulting Letter ("Consulting Letter" or "Agreement") supersedes all prior Consulting Letters and sets forth the complete agreement by and between FTI and the Company for the engagement of FTI (the "Engagement") to provide the services of certain temporary officers and hourly employees to the Company to assist in its restructuring as described below. This agreement, the related Standard Terms and Conditions (Exhibit A) and the attached Exhibit B constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

### 2.     **Temporary Officers, Hourly Temporary Employees and Services**

The Services, to be performed at your direction, are expected to include the following:

* FTI will provide the services of Andrew Hinkelman ("Mr. Hinkelman") to serve as the Chief Restructuring Officer (the "CRO") reporting directly to the Restructuring Committee of the Board of Directors. In the capacity of CRO, Mr. Hinkelman will be an officer of the Company and will enjoy the same full and free access to the Board of Directors and its Committees as other members of the senior management of the Company as specified in the Corporate Governance Guidelines of the Board of Directors and, to the extent determined by the Board of Directors from time to time, will be granted the right to attend and participate (but not vote) in the meetings of the Company's Board of Directors, or its Committees, as an observer (it being understood that the Board of Directors of the Company may from time to time meet in "executive session" or otherwise ask that certain or all non-directors not attend such meeting or a portion thereof) (such role referred to as "Board Observer"). The CRO shall have the authority to communicate directly with employees of

Macquarie Capital (USA), Inc. and its affiliated entities ("Macquarie"), and to share information with such personnel.

- In addition to providing the CRO, FTI may also provide the Company with additional employees (the "Hourly Temporary Employees" and, together with the CRO, the "FTI Professionals"), subject to the terms and conditions of this Agreement. The Hourly Temporary Employees may be assisted by or replaced by other FTI professionals reasonably satisfactory to the Board and/or Committee, as required, who shall also become Hourly Temporary Employees for purposes hereof. The initial schedule of Hourly Temporary Employees is set out on Exhibit "B". FTI will keep the Company reasonably informed as to FTI's staffing and will not add additional Hourly Temporary Employees to the assignment without first consulting with the Company. The hours to be devoted by the Hourly Temporary Employees to the Engagement shall be determined by the CRO in his reasonable sole discretion.

- To the extent determined by mutual agreement of you and Mr. Hinkelman, FTI will provide the services of Hourly Tempory Employees to support Mr. Hinkelman in his role and in the accomplishment of the following specific aspects of the Services in coordination with the Company's senior management and assigned permanent employees:

**Financial Objectives**

To assist the Company, in a cost effective manner, in the planning, analysis of and execution of a restructuring that is intended to maximize value for all constituents and minimize disruption to the Company's operations.

**Liquidity Forecasting**
- Evaluate and manage the   inflows and outflows of cash (including approving all cash disbursements)
- Management and control of cash disbursements
- Advise the Company on cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested
- Preparation and negotiated of financing budgets and related documents

**Restructuring/Other Services**
- Assess potential EBITDA based on revenue and product line strategy and other restructuring initiatives
- Development of go forward business and restructuring plans, including without limitation the development of a written assessment of the future prospects of the business, the related working capital needs and a recommendation of how the Company can best be restructured to realize value
- Analyze long term capital needs to effectuate a capital raise, sale transaction or restructuring
- Develop working capital management tools
- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a capital raise, sale transaction, or restructuring
- Evaluate and manage the inflows and outflows of cash.

**Asset Sales**
- Assist with data collection and information gathering related to third party due diligence relating to potential transactions with financial and strategic buyers.

representation of the Company in securities transactions. FTI is not a registered broker-dealer in any jurisdiction and will not offer advice or its opinion or any testimony on valuation or exchanges of securities or on any matter for which FTI is not appropriately licensed or accredited. An affiliate of FTI is a broker-dealer but is not being engaged by the Company to provide any investment banking or broker-dealer services. The Company agrees to supply office space, and office and support services to FTI as reasonably requested by FTI in connection with the performance of its duties hereunder.

3. Fees

*Monthly Fee - Chief Restructuring Officer and Hourly Temporary Employees – Financial Objectives*

For services rendered in connection with this assignment, the Company agrees to pay FTI for the services of the CRO and Hourly Temporary Employees identified on Exhibit B as those working on the Financial Objectives a non refundable monthly fee (the "Monthly Fee") of $150,000 for the 1st calendar month ending October 31, 2015, $125,000 for the 2nd calendar month, and $100,000 for the 3rd calendar month. If the services of FTI are required post the 3rd calendar month, FTI will be paid a non refundable monthly fee of $75,000 until such services are no longer required. The Monthly Fee is due and payable, in advance, on the first day of each calendar month and shall be deemed accrued and earned upon receipt. In addition to the Monthly Fee, the CRO may add additional Hourly Temporary Employees with the consent of the Company and Macquarie (in its capacity as Senior Lender) at a mutually negotiated fixed weekly rate. In the event that the Company determines that the CRO does not need to be engaged on a full-time basis, then provided that the Company gives FTI five (5) written days notice before the first day of the following calendar month, the Company may pay FTI an hourly fee (in lieu of the Monthly Fee) based on the hours incurred by the CRO and the Hourly Temporary Employees on behalf of the Company multiplied by the standard hourly rates of such professionals. The Company agrees that these amounts represent valid fees to be paid.

*One-time Bankruptcy Preparation Fee*

For services rendered in connection with the preparation and execution of a bankruptcy filing, the Company agrees to pay FTI a one-time preparation fee of $75,000. The one-time fee will be paid from the escrow account established by Macquarie for those professionals retained to execute a potential filing.

*One-time Bankruptcy Reporting Fee*

For services rendered in connection with the preparation of the Statement of Financial Affairs, the Schedules of Assets and Liabilities and the initial operating report as required by the US Trustee and Bankruptcy Court, the Company agrees to pay FTI a one-time fee of $60,000.

Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the various fees outlined above, FTI will bill for reasonable travel expenses which are incurred on your behalf during this Engagement and pre-appoved by you via email.

We will send the Company invoices (not less frequently than monthly) for the Services rendered and travel expenses incurred on the basis discussed above. ZoomSystems agrees that FTI is not an employee of the Company and the FTI employees and independent FTI contractors who perform the Services are not employees of the Company, and they shall not receive a W-2 from the Company for any fees earned under this Engagement, and such fees are not subject to any form of withholding by

the Company. The Company shall provide FTI a standard form 1099 on request for fees earned under this Engagement.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

4.    **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5.    **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and the administrative agent. As you may be aware, FTI is regularly retained by the administrative agent and/or other members of your lending group (or law firms retained by the administrative agent or lending group members). However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6.    **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Andrew Hinkelman at (415) 283-4214 or (415) 370-7427.

Yours faithfully,

FTI CONSULTING, INC.

NewZoom, Inc.
September 8, 2015

By: _____
Andrew Hinkelman
Senior Managing Director

Attachment – As stated

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

NewZoom, Inc.

By: _____
Jack Lawrence
President and CEO

Date: _____9/9/15_____

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with ZoomSystems, Inc dated September 8, 2015. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1. Reports and Advice**

1.1 **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party other than Macquarie, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2. Information and Assistance**

2.1 **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2 **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4 **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

## 3. Additional Services

3.1 **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

## 4. Confidentiality

4.1 **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party other than Macquarie without the other party's consent. Confidential information shall not include information that:

4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3 is or has been independently developed by the recipient.

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3 **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5 **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

## Termination

5.1 **Termination of Engagement.** The Engagement shall terminate at the end of the period described in Section 3 of the Engagement Letter, unless the parties agree to continue the Engagement on an hourly basis in which case the Engagement shall continue for so long as FTI agrees to provide Services on such basis. Upon the date of such termination, (the "Termination Date"), FTI shall cease work and the Company shall have no further obligation for fees and expenses of FTI arising or incurred after the Termination Date. In addition, upon termination the Company shall reimburse FTI for its travel

expenses (the "Termination Expenses") incurred in connection with commitments made by FTI prior to the Termination Date with respect to advance travel arrangements reasonably incurred and pre-approved by the Company, to the extent FTI is unable to obtain refunds of such expenses. FTI shall provide the Company with reasonable documentation to substantiate all Termination Expenses for which payment is requested.

5.2 **Continuation of terms**— The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

## 6. Liability Limitation and Waiver of Jury Trial

6.1 **Indemnification and Insurance** - Subject to any limitation post-petition required by the Bankruptcy Court, the Company agrees to indemnify and hold harmless FTI and its shareholders, directors, officers, managers, employees, contractors, agents and controlling persons (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of the Company, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Application shall include the assumption by the Company of FTI's right to indemnification in respect of its actions under this Agreement prior to the Petition Date. The Indemnified Party shall promptly forward to the Company all written notifications and other matter communications regarding any claim that could trigger the Company's indemnification obligations under this Section 6. If the Company so elects or is requested by an Indemnified Party, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Company, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the reasonable fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. The Company further agrees that the Company will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential

party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, the Company has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Company's indemnification obligations under this Section 6 without the written consent of the Company, which shall not unreasonably be withheld or delayed or conditioned. The Company will not be liable for any settlement of any action, claim, suit or proceeding affected without the Company's prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of the Company or if there be a final judgment for the plaintiff, the Company agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

6.2     This indemnity shall not apply to any portion of any such losses, claims, damages, liabilities and expenses to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence, willful misconduct or violation of law of any such Indemnified Party. The Company agrees to use commercially reasonable best efforts to (i) include Andrew Hinkelman, and any other FTI personnel who assume officer or director positions with the Company or who perform Services hereunder, FTI and its agents, employees, officers, subcontractors, directors, joint venture partners and members, as insureds under the Company's directors and officers insurance; and (ii) unless it is unable to do so at a commercially reasonable cost, purchase a three-year directors and officers insurance "tail" or runoff policy (or such a policy for such shorter period as Company has the right to or is otherwise able to purchase) covering the period of FTI's service. In connection with this engagement Company represents to FTI that Company hereby represents that (i) it has timely remitted and will continue to timely remit to the appropriate beneficiaries all employee source deductions, payroll and other taxes, benefits deductions, and contribution to employee benefit programs, and has timely collected and remitted sales and use and other similar taxes to appropriate collecting authorities and will continue timely to do so; (ii) there is no litigation or other proceeding pending, or to knowledge of Company, threatened (nor is Company aware of facts that could give rise to such), in each case that seeks or could give rise to personal liability of officers and directors of Company; and (iii) Company has been in continuing compliance with all applicable laws and regulations concerning the discharge, treatment, storage, transportation or use of hazardous materials and is aware of no facts or circumstances that could give rise to Company responsibility or liability under such laws and regulations.

6.3     **Limitation of liability** - You and the Company agree that no Indemnified Person shall have any liability as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of an Indemnified Person or Persons. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.4     **WAIVER OF JURY TRIAL** –TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR

COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

7. **Governing Law and Jurisdiction**— The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The Bankruptcy Court having jurisdiction over the Company's bankruptcy case(s) shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

FTI CONSULTING, INC

## *Confirmation of Standard Terms and Conditions*

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

NewZoom, Inc.

By: _____
    Jack Lawrence
    President and CEOChief Executive Officer

Date: ___9|9|15___

## EXHIBIT B

## INITIAL SCHEDULE OF TEMPORARY EMPLOYEES

| Name | Hourly Rate (1) |
|------|------------------|
| Andrew Hinkelman | $950 |
| Brandon Beal | $750 |
| Zach Contreras | $315 |
| Sarah Dauterman | $315 |

(1) Hourly rate will not be charged, as these professionals will be billed out on a flat fee basis

**<u>EXHIBIT B</u>**

**Hinkelman Declaration**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

John D. Fiero (CA Bar No. 136557)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:      (415) 263-7000
Facsimile:      (415) 263-7010
E-mail:         jfiero@pszjlaw.com
                dgrassgreen@pszjlaw.com
                jlucas@pszjlaw.com
                jrosell@pszjlaw.com

Proposed Counsel for Debtor

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No. 15-31141-HB |
| NEWZOOM, INC.,[1] | Chapter 11 |
| Debtor. | **DECLARATION OF ANDREW HINKELMAN IN SUPPORT OF MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF FTI CONSULTING INC. TO PROVIDE ANDREW HINKELMAN AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR AND TO ASSIST THE CRO, NUNC PRO TUNC TO THE PETITION DATE** |

I, Andrew Hinkelman, being duly sworn, says:

1.      I am a senior managing director of FTI Consulting, Inc. ("FTI"), which has an office located at One Front Street, Suite 1600, San Francisco, CA 94111.  I make this declaration in support of the above-captioned debtor's (the "Debtor") motion (the "Motion") for the entry of an order pursuant to section 363 of Title 11 of the United States Code (the "Bankruptcy Code") approving the engagement contract, dated September 8, 2015 (the "Engagement Contract") of FTI to retain me as the Chief Restructuring Officer (the "CRO"), and to provide additional individuals (the

---

[1] The last four digits of the Debtor's tax identification number are:  (9130).  The location of the Debtor's headquarters and service address is 22 Fourth Street, San Francisco, CA 94103.

DOCS_LA:329826.5

"Additional Personnel") who will provide services in support of the CRO, *nunc pro tunc* to the commencement of this case (the "Petition Date"). A copy of the Engagement Contract is attached to the Motion as Exhibit A.

2. The statements set forth in this declaration (the "Declaration") are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of FTI or its affiliates. I am duly authorized to make this declaration on behalf of FTI.

3. I am a senior managing director with FTI. I am well-suited to provide the restructuring services required by the Debtor. As part of my job responsibilities at FTI, I help operationally and financially distressed organizations in both out-of-court workouts and chapter 11 reorganizations. I have extensive experience representing debtors and creditors in formal bankruptcy proceedings. My clients have included both public and private companies ranging in size from $75 million to more than $9 billion in assets and liabilities. I have experience in retail, manufacturing, hospitality, health care, high technology, distribution, professional services industries and others.

4. I have been instrumental in a number of prominent restructurings, assuming various senior executive and advisory rolls on an interim basis including (a) Fairfield Residential LLC, (b) Classic Party Rentals, (c) Trident Microsystems Inc., and (d) IMRIS, Inc.

5. FTI was retained prepetition to provide restructuring services to the Debtor under the Engagement Contract. FTI has a wealth of experience in providing services in restructurings and reorganizations and enjoys an excellent reputation for services its professionals have rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

6. I and various other FTI employees have devoted substantial amounts of time and effort prepetition to, among other things, researching options relative to maximizing the enterprise value of the Debtor, advising and assisting the Debtor with respect to the potential sale of substantially all of its assets, negotiating with critical secured and unsecured creditors, developing cash flow projections, evaluating and communicating restructuring alternatives to the Debtor, and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

supporting the Debtor's financial department in the management of its liquidity resources. FTI professionals have played an instrumental role in the Debtor's restructuring efforts to date.

7.      As a result of prepetition work performed on behalf of the Debtor, FTI has acquired significant knowledge of the Debtor and its business and is now familiar with the Debtor's financial affairs, debt structure, operations and related matters. Likewise, in providing prepetition services to the Debtor since on or about August 6, 2015, FTI's professionals have worked closely with the Debtor's management, its financial institutions and other advisors. Accordingly, FTI has developed relevant experience regarding the Debtor that will assist it in providing effective and efficient services to the Debtor in this bankruptcy case.

8.      FTI will endeavor to coordinate with the other professionals retained in this bankruptcy case to eliminate unnecessary duplication or overlap of work.

### Overview of Services to be Provided

9.      FTI will provide restructuring management services, crisis management services, and CRO services as described in the Engagement Contract (the "Services") including, but not limited to the following:

**Liquidity Forecasting**

- Evaluate and manage cash flow.
- Approve, manage, and control cash disbursements.
- Evaluate and control cash conservation measures and assist with implementation of cash forecasting and reporting tools as requested.
- Preparation and negotiation of financing budgets and related documents.

**Restructuring / Other Services**

- Assess potential EBITDA based on revenue and product line strategy and other restructuring initiatives.
- Development of go forward business and restructuring plans, including without limitation the development of a written assessment of the future prospects of the business, the related working capital needs and a recommendation of how the Company can best be restructured to realize value.
- Analyze long term capital needs to effectuate a capital raise, sale transaction, or restructuring.
- Develop working capital management tools.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

- Participate in development of strategy to negotiate with key stakeholders in order to effectuate a capital raise, sale transaction, or restructuring.

- Evaluate and manage the inflows and outflows of cash.

**Chapter 11 Execution Services**

- Assist Company personnel with the communications and negotiations with lenders, creditors, and other parties-in-interest including the preparation of financial information for distribution to such parties-in-interest.

- Lead the compilation and preparation of financial information, statements, schedules and monthly operating reports necessary due to requirements of the Bankruptcy Court and/or Office of the US Trustee.

- Assist the Company and its other advisors with the formulation of a chapter 11 plan of reorganization / liquidation and the preparation of the corresponding disclosure statement.

- Prepare a liquidation analysis for a reorganization plan and/or negotiation purposes.

- Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors.

- Provide testimony in the chapter 11 case as necessary or appropriate at the Company's request.

10.    I will also continue to operate in the capacity of CRO under the protection of chapter 11 of the Bankruptcy Code.  In such capacity, I will:

- Report directly to the Board of Directors of the Debtor and make recommendations thereto and consult therewith regarding his activities and the Services as discussed above.

- Work on a collaborative basis with senior executives of the Debtor, coordinate the restructuring efforts of the Debtor, subject to the reporting structure above, including the identification, development, and implementation of strategies related to the Debtor's debt obligations, business plan, and other related matters.

- In consultation with the Debtor's senior executives, coordinate and manage the Services as discussed above and the FTI professional staff on the engagement.

11.    To address and handle the above responsibilities on behalf of the Debtor, I will be assisted by Additional Personnel provided through FTI at various levels.  All such Additional Personnel will be provided under and subject to the terms of the Engagement Contract.

12.    Notwithstanding any provisions of the Engagement Contract to the contrary, consistent with the "Jay Alix Protocol" implemented by the Office of the United States Trustee, FTI agrees that:

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

- In the event the Debtor seeks to have any of the Additional Personnel assume executive officer positions other than me, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.

- No principal, employee, or independent contractor of FTI and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case.

- For a period of three (3) years after the conclusion of the engagement, neither FTI nor any of its affiliates will make any investments in the Debtor.

### Compensation

13. The Debtor and FTI have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement Contract (the "Fee Structure"):

- For the services rendered by me and the Additional Personnel pursuant to the Engagement Contract, the Company agrees to pay FTI a monthly fee (the "Monthly Fee") of $150,000 for the 1st calendar month ending October 31, 2015, $125,000 for the 2nd calendar month, and $100,000 for the 3rd calendar month. If the services of FTI are required post the 3rd calendar month, FTI will be paid a monthly fee of $75,000 until such services are no longer required. The Monthly Fee is due and payable, in advance, on the first day of each calendar month and shall be deemed accrued and earned upon receipt. In addition to the Monthly Fee, the CRO may add additional Hourly Temporary Employees with the consent of the Company and Macquarie (in its capacity as Senior Lender) at a mutually negotiated fixed weekly rate.

- Additionally, for services rendered in connection with the preparation of the Statement of Financial Affairs, the Schedules of Assets and Liabilities and the initial operating report as required by the United States Trustee and Bankruptcy Court, the Company agrees to pay FTI a one-time fee of $75,000.

- No prepetition retainer was paid to FTI, and no postpetition retainer is due. However, $65,000 previously held in the trust account of Pachulski Stang Ziehl & Jones LLP for professional fees was transferred to FTI shortly before the filing. The balance remaining due and owing by the Debtor to FTI – $64,771 – has been written off such that FTI was not a creditor of the Debtor upon the bankruptcy filing.

14. In addition to the rates set forth above, the Debtor shall reimburse FTI for all reasonable out-of-pocket expenses incurred in connection with this engagement such as travel, lodging, telephone and facsimile charges.

15. FTI will file with the Court, with copies to the United States Trustee and any official committees, a monthly report of staffing on the engagement for the previous month. Such report

5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

16.    FTI shall file with the Court (and serve copies on the United States Trustee and any official committees appointed in this case contemporaneously with such filing) reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall contain summary charts which describe services provided, identify the compensation earned by each executive officer and employee provided, and itemize the expenses incurred. My time records and the time records for all Additional Personnel shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. When FTI personnel are providing services at an hourly rate, such personnel shall record their time entries in increments of no greater than one-half hour (0.5). All compensation shall be subject to review by the Court in the event an objection is filed. The first quarterly report will be submitted forty-five (45) days from the end of the first calendar quarter after the Petition Date and will cover the period to and including the last day of the first quarter after the Petition Date. This procedure will continue at three month intervals thereafter. Because FTI and I are not being employed as a professional under section 327 of the Bankruptcy Code, we will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. We will, however, submit the reports described above.

**General Disinterestedness of FTI**

17.    Although the Debtor does not propose to retain us under section 327 of the Bankruptcy Code, FTI has nonetheless performed a computerized conflict check and, to the best of its knowledge and except to the extent disclosed herein, does not hold any interest adverse to the interests of the Debtor's estate.

18.    FTI has agreed not to share with any person or entity any compensation received by it in the Debtor's case with any non-affiliated entity. Neither FTI, nor any of its principals, employees, agents or affiliates has any connection with the Debtor, its significant creditors, the United States Trustee or any other significant party with an actual or potential interest in this bankruptcy case or their respective attorneys or accountants, except as set forth herein.

6

19.     From time to time, FTI has provided services, and likely will continue to provide services, to certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to this bankruptcy case.

20.     These unrelated matters involve numerous attorneys, financial advisors, and creditors, some of whom may be claimants or parties with actual or potential interests in this bankruptcy case or may represent such parties.

21.     Additionally, in the ordinary course of its business, FTI may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors, or other interested parties in this bankruptcy case.

22.     The Debtor maintains business relationships with numerous shareholders, lenders, creditors and other parties.  FTI may have advisory or other commercial or professional relationships with such entities or persons unrelated to the Debtor or its business affairs.  No such relationships are related to this bankruptcy case.

23.     Because the Debtor is a large enterprise with numerous creditors and other relationships, FTI is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if FTI discovers additional information that requires disclosure, FTI will file a supplemental disclosure with the Court.

24.     FTI has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this bankruptcy case.  If this Court approves the Motion, FTI will not accept any engagement or perform any services for any entity or person other than the Debtor in this bankruptcy case.  FTI will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties in interest in this bankruptcy case, provided, however, that such services do not relate to, or have any direct connection with, this bankruptcy case.

25.     The Debtor does not owe FTI any amount for services performed or expenses incurred prior to the Petition Date and thus FTI is not a prepetition creditor of the Debtor.

26.     Accordingly, to the extent relevant, the FTI is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

DOCS_LA:291826.5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**Indemnification and Liability Provisions**

27.     The Engagement Contract contains standard indemnification and limitation of liability language with respect to the Services.  Notwithstanding any provisions of the Engagement Contract to the contrary, in accordance with the J. Alix Protocol, FTI has agreed otherwise, as set forth below.

28.     In my capacity as CRO, the Debtor shall indemnify me on the same terms as provided to the Debtor's directors under the Debtor's by-laws and applicable state law.

29.     With respect to the Additional Personnel, the Debtor shall have no obligation to indemnify FTI or to provide contribution or reimbursement to FTI for any claim or expense that is either (a) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of FTI; or (b) settled prior to a judicial determination as to FTI's willful misconduct, gross negligence, bad faith or self-dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution or reimbursement under the terms of the Engagement Contract.

30.     If FTI believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification with respect to the Additional Personnel, including without limitation the advancement of defense costs, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this bankruptcy case (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing, dismissing, or converting this chapter 11 case, FTI will file an application to this Court seeking approval of such payment, and the Debtor may not pay any such amounts to FTI before the entry of an order by this Court approving the payment; provided, however, that the foregoing is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification by FTI, and is not a provision limiting the duration of the Debtor's obligation to indemnify FTI.

31.     Finally, notwithstanding any provisions of the Engagement Contract to the contrary, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court to hear or determine any controversy or claims

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1 | with respect to, in connection with, arising out of, or in any way related to FTI's services performed

2 | during this bankruptcy case.

3 |       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

4 | and correct.

5

6 | Executed this 8th day of October, 2015 at San Francisco, California.

7

8 |                 */s/ Andrew Hinkelman* _____
                Andrew Hinkelman

DOCS_LA:291826.5