1  DONNA S. TAMANAHA (WI# 1013199)
   Assistant United States Trustee
2  JULIE M. GLOSSON (SBN 230709)
   Trial Attorney
3  United States Department of Justice
   Office of the U.S. Trustee
4  235 Pine Street, Suite 700
   San Francisco, CA 94104
5  Telephone: (415) 705-3333
   Facsimile: (415) 705-3379
6  Email: julie.m.glosson@usdoj.gov

7  Attorneys for TRACY HOPE DAVIS
   United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 15-31141 HLB |
| NEWZOOM, INC., | Chapter 11 |
| Debtor. | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO EMPLOY FTI CONSULTING AND ANDREW HINKLEMAN AS <u>DEBTOR'S CHIEF RESTRUCTURING OFFICER</u>**

Tracy Hope Davis, United States Trustee for Region 17, by and through her undersigned counsel, hereby objects to Debtor's *Motion For Entry Of Order Pursuant To Section 363 Of The Bankruptcy Code Approving The Engagement Contract Of FTI Consulting Inc. To Provide Andrew Hinkleman As Chief Restructuring Office Of The Debtor And To Assist The CRO, Nunc Pro Tunc To The Petition Date* ("CRO Motion") [dkt. #116], and requests the Court deny approval of the CRO Motion for the reasons set forth herein.

## I. INTRODUCTION

Debtor seeks to employ FTI Consulting, Inc. and Andrew Hinkleman as its corporate restructuring officer ("CRO") under section 363. Rather than seek employment under section 327(a) as an estate professional, the Debtor is requesting authority under section 363(b). The Motion and supporting documents fail to provide the transparency and disclosures necessary to evaluate the relief requested.

Meaningful disclosure is a cornerstone of the employment process, and the speed at which this case is proceeding does not excuse compliance with those requirements. As a general matter, the CRO Motion fails to discuss the nature and description of the services actually rendered pre-petition and that which has been performed since the bankruptcy filing. The lack of disclosure makes it difficult to discern (1) whether there will be duplication of efforts between the Additional Personnel and Debtor's current employees, (2) the scope of the indemnification as to unknown FTI personnel, and (3) disclosure of connections between FTI, the Debtor, Debtor's shareholders, and creditors. Because the CRO Motion was filed more than two months after FTI began rendering services Debtor has had ample time to gather the facts.

Absent additional disclosure and modification, the CRO Motion should be denied. Accordingly, and to prevent any undue prejudice or delay, the United States Trustee requests an expedited hearing.

## II. STATEMENT OF FACTS

### Background

1. Debtor NewZoom, Inc. filed a voluntary petition for relief under chapter 11 on September 10, 2015.

2. On September 21, 2015, the United States Trustee appointed the Official Committee of Unsecured Creditors. See Notice [dkt. #21].

3. No trustee or examiner has been appointed in this case. Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On October 9, 2015, Debtor schedules of assets and liabilities, and Statement of Financial Affairs. See dkt. # 124 and 125.

5. The meeting of creditors was held on October 20, 2015.

### Plan and Disclosure Statement

6. On September 22, 2015, Debtor filed its first Plan [dkt. #56] and Disclosure Statement [dkt. #57]. On October 23, 2015, Debtor filed *Debtor's Amended Chapter 11 Plan of Reorganization* ("Amended Plan") [dkt. #173] and the accompanying Disclosure Statement [dkt. #174].

7. On October 29, 2015, at a hearing on approval of Debtor's Disclosure Statement, the Court approved the Debtor's Disclosure Statement. The hearing to consider confirmation of Debtor's Amended Plan is set for December 2, 2015.

8. Debtor's motion to borrow [dkt. #10] was approved on a final basis by order entered on October 16, 2015. See Final Order [dkt. #153]. Accordingly, Debtor is authorized to borrow $3.7 million from its pre-petition lender, MIHI, LLC.

### CRO Motion

9. On October 8, 2015, Debtor filed the CRO Motion seeking approval of the engagement letter between the Debtor and FTI Consulting, Inc. ("FTI"). CRO Motion [dkt. # 116].

10. FTI's engagement began on either August 5, 2015, id. at § VIII p. 13, line 23, or August 6, 2015, id. at § VII(B) p.4, line 25.

11. Mr. Andrew Hinkleman will serve as the Debtor's Chief Restructuring Officer and Additional Personnel, as defined in the CRO Motion, will provide services to the Debtor. Id.

12. <u>Pre-Petition Payments.</u>  Debtor states that it did not pay a pre-petition retainer to FTI, but that FTI received payment of $60,000[1] from Debtor's counsel, Pachulski Stang Ziehl & Jones LLP, "shortly before the filing." <u>Id.</u> at § V.  Neither the CRO Motion or Mr. Hinkleman's Declaration provide the date upon which payment was received by FTI.

13. Debtor owed a balance to FTI in the amount of $64,771, but that amount "has been written off such that FTI was not a creditor of the Debtor upon the bankruptcy filing." Hinkleman Decl., ¶ 13 [dkt. #116].

14. <u>Connections.</u>  Regarding FTI's connections to creditors and parties in interest, Mr. Hinkleman states in his declaration at paragraph 19, that FTI has connections "to certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to this bankruptcy case." <u>Id.</u> at ¶ 19.

15. Mr. Hinkleman further states at paragraph 20, that "[t]hese unrelated matters involve numerous attorneys, financial advisors, and creditors some of whom may be claimants or parties with actual or potential interests in this bankruptcy case or may represent such parties." <u>Id.</u> at ¶ 20.

16. Mr. Hinkleman further states at paragraph 22, that "The Debtor maintains business relationships with numerous shareholders, lenders, creditors and other parties.  FTI may have advisory or other commercial or professional relationships with such entities or person unrelated to the Debtor or its business affairs.  No such relationships are related to this bankruptcy case." <u>Id.</u> at ¶ 22.

17. <u>Compensation Reports.</u>  Mr. Hinkleman and FTI do not intend to submit applications for approval of compensation and reimbursement of expenses in accordance with 11 U.S.C. §§ 330 and 331, but "shall file with the Court . . . reports of compensation earned and expenses incurred on at least a quarterly basis."  Hinkleman Decl. § 16 [dkt. #116].

---

[1] Per Supplemental Declaration of Mr. Hinkleman filed on October 16, 2015, appearing at docket #157, changing amount from $65,000 to $60,000.

18. "All compensation shall be subject to review by the Court" if an objection is filed; however, the reimbursement of expenses is not subject to review. Id.

19. <u>Additional Personnel.</u>  The engagement of FTI provides that Mr. Hinkleman "will be assisted by Additional Personnel provided through FTI at various levels." CRO Motion, § IV p. 6, lines 22-22 [dkt. #116].

20. Neither the Debtor nor FTI has disclosed the identity of the Additional Personnel or the services to be provided by these individuals.

21. Debtor agrees to indemnify FTI employees serving as corporate officers. Id. at p. 6, lines 25-26.

22. <u>Future Employment of FTI Employees.</u>  Section 3 of the Engagement Contract, Ex. A to CRO Motion, provides that the Debtor may solicit for employment FTI employees:

> The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement. (Sic)

### III. <u>THE UNITED STATES TRUSTEE HAS STANDING TO OBJECT</u>

The United States Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district pursuant to 28 U.S.C. § 586. This duty is part of the United States Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching, to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. <u>See</u> <u>United States Trustee v. Columbia Gas. Sys. Inc. (In re Columbia Gas Sys. Inc.)</u>, 33 F.3d 294, 295-96 (3rd Cir. 1994).

In addition, under 11 U.S.C. § 307, the United States Trustee has standing to be heard on the CRO Motion and the issues raised in this Objection.

## IV. LEGAL AUTHORITY

### A. CRO Motion Should Be Denied Because Debtor and FTI Have Failed to Make Adequate Disclosure

The CRO Motion and Hinkleman Declaration do not provide sufficient disclosure regarding the following: (1) FTI's connections to Debtor's creditors, shareholders, and professionals; (2) identity of Additional Personnel; and (3) services FTI provided pre-petition.

#### 1. FTI's Connections

FTI acknowledges that there are connections between FTI and "to certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to this bankruptcy case." Hinkleman Decl. at ¶ 19. Rather than disclose the connections, FTI and the Debtor simply state that connections exist and that those connections are not material or related to the bankruptcy case. That is not adequate disclosure for a professional seeking employment. It is not up to the applicant and the professional to conclude the connections are not important or material. Kun v. Mansdorf (In re Woodcraft Studios), 464 B.R. 1, 8 (N.D. Cal. 2011) aff'd Ninth Cir. 558 Fed. Appx. 755 (2014) (unpublished opinion) ("the duty to disclose extends to '[a]ll facts that may be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate,' regardless of whether the attorney thinks the information is sufficient to render him adversely interested." citing Park-Helena, 63 F.3d at 882.

#### 2. Additional Personnel

FTI and Debtor do not disclose the identity of the Additional Personnel who will assist Mr. Hinkleman and do not disclose the nature of the work to be performed by the Additional Personnel. As a result, the United States Trustee cannot ascertain whether there will be duplication of efforts between Additional Personnel and Debtor's current staff, and the scope of the indemnification Debtor intends to provide to the Additional Personnel. Debtor has agreed to

UST Objection to Debtor's Motion to Employ CRO 6
Case: 15-31141 Doc# 185 Filed: 10/29/15 Entered: 10/29/15 18:18:17 Page 6 of 8

indemnify when it is not clear to whom such benefit is being extended. In addition, as proposed, FTI has not performed a conflicts check on the existing Additional Personnel nor does it have an obligation to perform conflicts checks in the future.

An adverse interest is created between FTI and the bankruptcy estate by the terms of the engagement that allows Debtor to solicit and employ FTI employees. Although "interest adverse to the estate" is not defined in the Bankruptcy Code, case law has defined it to include:

> (1) possession or assertion of an economic interest that would tend to lessen the value of the bankrupt estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) to possess a predisposition under circumstances that render such a bias against the estate.

Dye v. Brown (In re AFI Holding, Inc.), 530 F.3d 832, 845 (9th Cir. 2008); see also In re Tevis, 347 B.R. 679 (B.A.P. 9th Cir. 2006) (internal citations omitted).

Because this arrangement provides for compensation to be paid to FTI, this portion of the agreement creates an actual or potential adverse interest to arise. Further, and because FTI has no duty to disclose the identity of Additional Personnel, this adverse interest may never be known. The authority for this arrangement appears at Section 3 of the engagement letter and should be removed entirely.

### 3. Pre-Petition Services

FTI has been on the ground since either August 5 or 6, 2015; however, Debtor and FTI make only vague statements as to what services were performed pre-petition and from the date of filing to the filing of the CRO Motion. The CRO Motion reads as if it were filed on the petition date when in fact it was filed four weeks after commencement of the case and after significant events occurred, including approval for interim DIP financing, and filing of Debtor's first Plan and Disclosure Statement. FTI should disclose with particularity, including providing invoices, the services rendered pre-petition and post-petition.

To the extent that FTI receive payments pre-petition and any balance owed pre-petition, FTI has a duty to make disclosure regarding the specific details. Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.), 304 F.3d 246 (3rd Cir. 2002) (a professional seeking section 327(a) employment

must make full disclosure regarding pre-petition services and payments to determine whether preference exists; after which the court must determine whether a avoidable preference exists).

In this instance, Debtor's counsel transferred from its trust account $60,000 "to FTI shortly before the filing." FTI acknowledges it was owed $64,771 pre-petition, but that amount "has been written off such that FTI was not a creditor of the Debtor upon the bankruptcy filing." While the Third Circuit in <u>Pillowtex</u> considered the disclosure issues in the context of an application for employment under section 327, the same standards of disclosure should apply to a professional employed under section 363. It is not clear when payment was made to FTI. Debtor has not provided adequate information to determine whether a preference exists.

### B. <u>CRO Motion Should Be Denied Because It Does Not Provide For Sufficient Oversight and Transparency for Reimbursement of Expenses to FTI</u>

Both the compensation paid to FTI and reimbursement of expenses are not subject to approval by the Bankruptcy Court; however, compensation may be reviewed if a party objects. Under this arrangement, while FTI is required to disclose expenses incurred, there is no oversight regarding the necessity of the expenses as would be required under 11 U.S.C. § 330 of a professional employed under section 327.

## V. <u>CONCLUSION</u>

WHEREFORE, the United States Trustee requests that the Court deny CRO Motion, and grant such other relief as is just and appropriate under the circumstances.

Dated: October 29, 2015

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

 /s/ Julie M. Glosson
Trial Attorney
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 705-3333
Facsimile: (415) 705-3379

UST Objection to Debtor's Motion to Employ CRO  8

Case: 15-31141   Doc# 185   Filed: 10/29/15   Entered: 10/29/15 18:18:17   Page 8 of 8