1  DONNA S. TAMANAHA (WI# 1013199)
   Assistant United States Trustee
2  JULIE M. GLOSSON (SBN 230709)
   Trial Attorney
3  United States Department of Justice
   Office of the U.S. Trustee
4  235 Pine Street, Suite 700
   San Francisco, CA 94104
5  Telephone: (415) 705-3333
   Facsimile: (415) 705-3379
6  Email: julie.m.glosson@usdoj.gov

7  Attorneys for TRACY HOPE DAVIS
   United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 15-31141 HLB |
| NEWZOOM, INC., | Chapter 11 |
| Debtor. | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR APPROVAL OF KEY EMPLOYEE INCENTIVE PLAN AND <u>NON-INSIDER RETENTION PLAN</u>**

Tracy Hope Davis, United States Trustee for Region 17, by and through her undersigned counsel, hereby objects to Debtor's *Motion For The Approval of Key Employee Incentive Plan and Non-Insider Retention Plan and Authorizing Payments Thereunder* ("Motion") [dkt. #119], and requests the Court deny approval of the Motion for the reasons set forth herein.

I. **INTRODUCTION**

The United States Trustee objects to the Motion on the grounds that the Debtor has not satisfied its burden under 11 U.S.C. §§ 503(b)(1)(A) and 503(c) to demonstrate, *inter alia*, that (i) payments under the Incentive Plans are not primarily retention payments to insiders, (ii) the Incentive Plans are justified by the facts and circumstances of these cases, and (iii) the Incentive

Plan represents the "actual, necessary cost of preserving the estate[s]." The United States Trustee also objects to the Debtor's assertion that the Incentive Plans are subject to review under the business judgment rule.

Accordingly, and to prevent any undue prejudice or delay, the United States Trustee requests an expedited hearing.

## II. STATEMENT OF FACTS

### Background

1. Debtor NewZoom, Inc. filed a voluntary petition for relief under chapter 11 on September 10, 2015.

2. On September 21, 2015, the United States Trustee appointed the Official Committee of Unsecured Creditors. See Notice [dkt. #21].

3. No trustee or examiner has been appointed in this case. Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On October 9, 2015, Debtor schedules of assets and liabilities, and Statement of Financial Affairs. See dkt. # 124 and 125.

5. The meeting of creditors was held on October 20, 2015.

### Plan and Disclosure Statement

6. On September 22, 2015, Debtor filed its first Plan [dkt. #56] and Disclosure Statement [dkt. #57]. On October 23, 2015, Debtor filed *Debtor's Amended Chapter 11 Plan of Reorganization* ("Amended Plan") [dkt. #173] and the accompanying Disclosure Statement [dkt. #174].

7. On October 29, 2015, at a hearing on approval of Debtor's Disclosure Statement, the Court approved the Debtor's Disclosure Statement. The hearing to consider confirmation of Debtor's Amended Plan is set for December 2, 2015.

8. Debtor's motion to borrow [dkt. #10] was approved on a final basis by order entered on October 16, 2015. <u>See</u> Final Order [dkt. #153]. Accordingly, Debtor is authorized to borrow $3.7 million from its pre-petition lender, MIHI, LLC.

<u>Summary of Relief</u>

9. On October 8, 2015, Debtor filed its Motion for authorization to implement the following:

    a. A performance-based key employee incentive plan ("KEIP") and

    b. A non-insider retention plan ("KERP" and, together with the KEIP, the "Incentive Plans"). Motion [dkt. #119].

10. The total estimated cost of the Incentive Plans is $376,000 with $192,000 for the KERP and $184,000 for the KEIP.

<u>Summary of the KERP</u>

11. The KERP covers 13 non-insider employees, whose identity has been sealed. Debtor has not sought authority to file the sealed Exhibit A under 11 U.S.C. § 107.

12. The amount of the retention payout to each employee is also not disclosed.

13. To receive the retention payout, the eligible employee must be employed by the Debtor on the "Trigger Date", which "shall mean the earliest of: (a) December 18, 2015, (b) the date than an order confirming a plan of reorganization is entered by the Bankruptcy Court; and (c) the closing date for sale of substantially all of the [Debtor's] assets pursuant to Bankruptcy Code section 363. Motion, Ex. 1, p. 17 of 22 [dkt. #119].

14. Payments made under the KERP are separate and apart from any payments due to an eligible employee under any current or future severance agreement. <u>Id.</u>

15. Payments made under the KERP "will be in lieu of any other post-petition performance bonus or retention compensation otherwise payable" to the eligible employee.

UST Objection to Debtor's Motion For Approval of KERP/KEIP     3
Case: 15-31141    Doc# 186    Filed: 10/29/15    Entered: 10/29/15 18:23:20    Page 3 of 8

Summary of KEIP

16. The amounts payable to each eligible employee under the KEIP has not been disclosed. Motion, Ex. A.

17. For payment under the KEIP, fifty percent of the amount designated for each employee "shall be earned and payable on the Trigger Date, so long as (i) the Eligible KEIP Employee remains employed by the [Debtor] on such date and (ii) the [Debtor] has complied with the DIP Budget and as of the Trigger Date . . ." Motion, Ex. 1, p. 18 of 22 [dkt. #119].

18. The remaining fifty percent of the amount designated for each employee "shall be earned and payable upon either a Plan Approval or an Asset Sale, so long as the Eligible KEIP Employee remains employed by the [Debtor] upon such date." Id.

19. Just as with the KERP payments, payments under the KEIP "will be in lieu of other post-petition performance bonus or retention compensation" . . . and "shall not be lieu of any severance payments" that may be due to the eligible employee under a current or future severance agreement. Id.

**III. THE UNITED STATES TRUSTEE HAS STANDING TO OBJECT**

The United States Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district pursuant to 28 U.S.C. § 586. This duty is part of the United States Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching, to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. See United States Trustee v. Columbia Gas. Sys. Inc. (In re Columbia Gas Sys. Inc.), 33 F.3d 294, 295-96 (3rd Cir. 1994).

In addition, under 11 U.S.C. § 307, the United States Trustee has standing to be heard on the Motion and the issues raised in this Objection.

## IV. DEBTOR HAS FAILED TO DEMONSTRATE THE INCENTIVE PLANS COMPLY WITH LIMITS IMPOSED ON INSIDER PAYMENTS UNDER 11 U.S.C. § 503(C).

Section 503(c) imposes limits on the ability of a debtor to make transfers to insiders. Under section 503(c)(1), the Debtor must "based upon evidence in the record," demonstrate all three of the required elements of section 503(c)(1), which provides, in pertinent part, as follows:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
> (B) the services provided by the person are essential to the survival of the business; and
> (C) either—
> > (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
> > (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

Congress added Section 503(c) in 2005 to curtail payments of retention incentives to insiders to "'eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process.'" In re Residential Capital LLC, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012) ("Rescap") (quoting In re Global Home Prods., LLC, 369 B.R. 778, 784 (Bankr. D. Del. 2007)); accord In re Hawker Beechcraft, Inc., 479 B.R. 308, 312-13 (Bankr. S.D.N.Y. 2012); In re Velo Holdings, Inc., 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012). In

addition, Congress intended to limit the scope of key employee retention plans ("KERP") and other programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor. <u>Rescap</u>, 478 B.R. at 169. Congress intended to put into place "a set of challenging standards" for debtors to overcome before retention bonuses could be paid. <u>Global Home</u>, 369 B.R. at 784.

Debtor has the burden of demonstrating that the proposed Incentive Plans comply with the requirements of section 503(c)(1). The proponent of a bonus plan has the burden of showing that the plan is not a retention plan governed by Section 503(c)(1). <u>Hawker Beechcraft</u>, 479 B.R. at 313; <u>Rescap</u>, 478 B.R. at 170.

### A. Debtor Has Failed to Demonstrate that Section 503(c)(1) and (2) Do Not Apply to Incentive Plans

Debtor contends that section 503(c)(1) and (2) do not apply to the Incentive Plans because, in the case of the KERP, only non-insider employees are eligible, and in the case of the KEIP, the plan is an incentive plan with performance-based metrics.

#### 1. Debtor Has Withheld Full and Public Disclosure Identity of Employees it Contends are Non-Insiders

Debtor asserts the KERP is a retention plan for thirteen non-insider employees, but it is impossible to ascertain based upon the Debtor's disclosures because it has unilaterally sealed the identity of the eligible employees by stating on Exhibit A "REDACTED". This self-sealing poses two significant hurdles to approval. First, without the disclosure of the identity, job description, and title of the employees eligible under the KERP, the eligible employee's status as an insider cannot be ascertained. Debtor cannot satisfy its burden of demonstrating that the KERP does not fall within the limits of section 503(c) without disclosing the necessary information to determine whether the eligible employee falls within the definition of an insider under 11 U.S.C. § 101(31). Section 503(c)(1) requires there be "evidence in the record" to evaluate such transfer falls within the ambit of subsection (c)(1).

Second, Debtor has sealed portions of its Motion without complying with section 107. Section 107(a) creates a presumption in favor of transparency such that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records" subject to examination

by any person, government unit, and United States Trustee. 11 U.S.C. §§ 101(15) and 107(a). Section 107 applies to any document filed in any bankruptcy case. Gitto v. Worcester Tel. & Gazette Corp. (In re Gitto Global Corp.), 422 F.3d 1, 7 (1st Cir. 2005). This presumption in favor of open access "evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24 (2nd Cir. 1994). As the United States Court of Appeals for the Ninth Circuit recently confirmed, "courts have 'recognize[d] a general right to inspect and copy public records and documents, including judicial records and documents.'" Oliner v. Kontrabecki, 745 F.3d 1024, 1025 (9th Cir. 2014) (internal citation omitted). See also In re Gitto 422 F.3d at 7 (citing In re Crawford, 194 F.3d 954, 960 (9th Cir. 1999)). Given Congress' intent to limit the scope of KERPs and to achieve transparency in the bankruptcy process, the information provided by the Debtor falls short.

### 2. The KEIP Is A Retention Plan

Debtor contends the KEIP is a performance-based incentive plan designed to "provide targeted payments to certain employees if they meet certain objective performance criteria that are core to the outcome of this bankruptcy case." Motion, § V(B)(2). The Motion, however, fails to contain information sufficient to demonstrate that the targets are meaningful and "difficult to reach." Dana Corp. 358 B.R. 567, 583 (Bankr. S.D.N.Y. 2006). In Rescap, the bankruptcy court recognized that "triggering bonus awards solely on the basis of a sale transaction, confirming a reorganization plan or exiting bankruptcy are not sufficient to shift consideration of a plan providing for payments to insiders from section 503(c)(1) to section 503(c)(3)." Rescap, 478 B.R. at 168. Rather, there should be difficult targets or hurdles connected with such events.

The performance benchmarks for the KEIP are nearly certain to occur. Under the KEIP, fifty percent of the payment amount is "earned and payable" on the Trigger Date, which is the earliest of December 18, 2015, the date an order confirming a plan of reorganization is entered by the Bankruptcy Court, and the closing date of a sale of substantially all assets under section

363. To be eligible for payment, the employee must remain employed with the Debtor and the Debtor must have complied with the DIP Budget through the Trigger Date.

By the time this Motion was filed seeking approval of the KEIP, the Debtor had already filed its Plan and Disclosure Statement and set a tentative schedule for confirmation of that Plan. That schedule remains unchanged in any material way since the Motion was filed. These are not challenging performance measures.

### B. Debtor's Reliance On the Business Judgment Standard is Misplaced

Debtor urges the Court to apply the business judgment test to satisfy section 363(b) and 503(c)(3). This is not the correct legal standard. Section 503(c)(3) requires the Debtor to show that the Incentive Plans are "justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). The reference to section 503(b) in subsection (c)(3) limits payments to those which may be allowed as an administrative expense under subsection (c). Administrative expenses may not be allowed unless such expenses are "actual and necessary to preserve the estate." Accordingly, Debtor must demonstrate that the Incentive Plans are necessary to preserve the value of the Debtor's estate and are "justified by the facts and circumstances of the case."

The Incentive Plans are in name only. The KEIP is a disguised retention plan wholly lacking in any meaningful performance-based measures. The record before this Court is insufficient to apply the analysis required by section 503(c).

## V. CONCLUSION

WHEREFORE, the United States Trustee requests that the Court deny Motion, and grant such other relief as is just and appropriate under the circumstances.

Dated: October 29, 2015                TRACY HOPE DAVIS
                                       UNITED STATES TRUSTEE

                                        /s/ Julie M. Glosson
                                       Trial Attorney
                                       Office of the United States Trustee
                                       235 Pine Street, Suite 700
                                       San Francisco, CA 94104
                                       Telephone: (415) 705-3333
                                       Facsimile: (415) 705-3379