John D. Fiero (CA Bar No. 136557)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jfiero@pszjlaw.com
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com
jrosell@pszjlaw.com

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re:

NEWZOOM, INC.,

Debtor.

Case No. 15-31141-HB

Chapter 11

**DEBTOR'S REPLY IN SUPPORT OF MOTION FOR THE APPROVAL OF KEY EMPLOYEE INCENTIVE PLAN AND NON-INSIDER RETENTION PLAN AND AUTHORIZING PAYMENTS THEREUNDER; SUPPLEMENTAL DECLARATION OF ANDREW HINKELMAN**

Date: November 12, 2015
Time: 10:00 a.m.
Place: 235 Pine Street, 23rd Floor
Judge: The Hon. Hannah Blumenstiel

## INTRODUCTION

The only party objecting to the *Debtor's Motion for the Approval of Key Employee Incentive Plan and Non-Insider Retention Plan and Authorizing Payments Thereunder* [Docket No. 119] (the "Motion") is Tracy Hope Davis, the United States Trustee (the "UST").[1] Neither the Committee (whose dividend in this case is dependent upon a successful reorganization) nor MIHI (the secured prepetition and DIP lender whose money has funded this reorganization case and will make the Retention Payments and Incentive Payments) objected to the Motion, thus implicitly recognizing the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

importance and value the Incentive Plans bring to the estate.  Simply put, there is no basis presented here to challenge the Debtor's business judgment that the KEIP and the KERP present actual and necessary benefits to the ongoing fast track reorganization taking place in this bankruptcy case.

**ADDITIONAL FACTS**

Although the Debtor did not attach to the Motion the detailed Exhibit A showing the names of the plan participants, their titles, annual salaries, and payment amounts, that document was shared with the UST immediately after she filed her Objection (which would have been shared upon request and without an objection on file). That document, which has also been reviewed by counsel for the Committee and MIHI, will be available at the hearing on the Motion for *in camera* review by the Court. One thing made absolutely clear by the document is that the participants in the KERP are neither senior management nor insiders of the Debtor. The Debtor believes that the UST understands now that there are no insiders subject to the KERP and hopes that she will withdraw her objection regarding the potential that any insiders stand to benefit from the KERP.

It was the Debtor's board of directors that voted *prepetition* to adopt the KEIP and the KERP. The justifications for that decision are manifest in the recitals of the document itself:

> Historically, the Company has been able to hire and retain personnel such as the Eligible Employees using competitive salaries, benefits, and an options program.  However, the Company believes that the bankruptcy filing and other recent events have negatively impacted their ability to retain the Eligible Employees.  First, the bankruptcy filing has created an atmosphere of uncertainty as to employees generally.  The Eligible Employees specifically are concerned that more workforce downsizings may occur.  Second, the bankruptcy filing has rendered the stock options held by the Eligible Employees worthless, and could potentially reduce compensation due to a lack of payouts from performance bonuses.  Third, many of the Eligible Employees have taken on significant additional duties and responsibilities following the bankruptcy filing.  These factors have greatly increased the risk that other companies, including competitors, may successfully recruit the Eligible Employees, the Company's most talented and experienced operating personnel.  In order to maintain the consistency that is crucial to achieving positive operating results, and ultimately a successful reorganization, the Company has developed the KERP and KEIP.

Even so, the UST suggests that there is some question as to whether (a) the targets created by the KEIP are sufficiently burdensome, and (b) the Incentive Payments are actual and necessary expenses that will benefit the Debtor's bankruptcy estate. In this regard, the Debtor offers the *Supplemental Declaration of Andrew Hinkelman*, attached hereto (the "Supplemental Hinkelman Declaration").

It is Mr. Hinkelman's opinion that the Eligible Employees have undertaken substantial additional responsibility. That responsibility includes managing the going-forward cash and expenses of the Debtor in a way which does not violate the Budget, to say nothing of the need to re-assess (and in many cases renegotiate) more than 1,000 prepetition contracts to which the Debtor is a party, all of which was required to be done after a substantial reduction in force undertaken by the Debtor in the early days of this case. One example of this extra burden can be found in the additional travel required of one Eligible KEIP Employee in the midst of these reorganization efforts: two previously unscheduled trips to Europe to reinforce a nascent customer relationship, as well as a trip to the Debtor's Japanese subsidiary to address challenges occasioned by the parent company's bankruptcy case.

It is also Mr. Hinkelman's opinion that the funds devoted to the KEIP Payments and the KERP Payments will provide a real benefit to the Debtor's estate. For all the foregoing reasons, Mr. Hinkelman believes the KEIP and KERP should be approved.

## ARGUMENT

### A. The KERP does not benefit insiders and should be approved.

The UST's first objection is that the "Debtor cannot satisfy its burden of demonstrating . . . whether the eligible employee falls with the definition of an insider." *See Objection*, p. 6, lines 21-24. The Debtor offers two responses. The first is that this argument turns the statute on its head. Section 503(c)(1) of the Bankruptcy Code is a prohibition on payments to insiders. So if this code section does not apply to non-insiders on its face, there is no need for "a finding of the court based on evidence in the record" that such payments satisfy subsections (c)(1)(A), (B), and (C). After all, those subsections relate to exceptions for payments to insiders and no exception is invoked here. The second is that the Debtor *has* made a showing that the Eligible KERP Employees are not insiders. Indeed, the Supplemental Hinkelman Declaration states categorically that "none of the Eligible KERP Employees are among the Debtor's senior management, nor are they (or have they ever been) directors of the Debtor." Presumably, the UST will not press this objection further at the hearing, as there is now "evidence in the record" on this point.

1  The UST's second argument is that the Debtor has run afoul of section 107(a) of the Bankruptcy Code because that statute creates a presumption in favor of transparency such that "a paper filed in this case under this title and the dockets of a bankruptcy court are public records . . ." *See Objection*, p. 6, lines 26-28.  This, too, is a "through the looking glass" sort of argument.  The Motion as filed is complete.  The Debtor is not seeking to keep a filed pleading away from the eyes of some creditors and not others in a manner that would implicate section 107(a) of the Bankruptcy Code.  On the contrary, the Debtor chose not to file Exhibit A simply to avoid the expense and complication of an additional motion to seal.  Moreover, the Debtor has shared Exhibit A with MIHI, the Committee, and the UST.  The Debtor is prepared to show it to the Court *in camera,* if requested.  Next, the Debtor has provided narrative explanations of the economics of the KEIP and KERP that include the number of Eligible Employees, the total dollar amounts set aside for the Payments, and the percentage of an Eligible Employee's salary represented by the Incentive Payments.  Finally, as the Supplemental Hinkelman Declaration explains, there is a cost associated with the additional level of disclosure that the UST says is warranted here.  That cost relates to the privacy of the Eligible Employees and the Debtor's interest in a harmonious and motivated work force.

### B. The KEIP is not a mere retention plan.

It is not true, as the UST contends, that "[t]he performance benchmarks for the KEIP are nearly certain to occur." *See Objection*, p. 7, line 24.  As explained in the Additional Facts above, the targets established by the KEIP are core to the outcome of this bankruptcy case and difficult to reach.  This case is not a simple liquidation, and the outcome is far from certain.  To mix metaphors, this case features a high wire act requiring literally hundreds of puzzle pieces to be put together in an abbreviated period of time during the busiest time of year for retail businesses.  As the Court knows, the Debtor's DIP loan includes aggressive milestones and requires substantial additional work to be performed by a company that is operating with a reduced head count.  The burdens on the Debtor's senior executives are the greatest, as they are the persons directly responsible for performing their regular jobs while, at the same time, re-negotiating literally hundreds of contractual arrangements in an effort to create a business that will cease to lose money and have positive EBITDA.

The UST also argues that "[b]y the time the Motion was filed seeking approval of the KEIP, the Debtor had already filed its Plan and Disclosure Statement and set a tentative schedule for confirmation of that Plan." *See Objection*, p. 8. Lines 3-4.  While the filing date of the Motion is irrelevant to its merits, the fact is the KEIP was put in place by the Debtor's board of directors prior to the Debtor filing for bankruptcy, not after.  The reason the Motion was not filed at the outset of the case arose from the need to socialize the topic with an organized and represented Committee, and the Committee was only formed one day before the Debtor filed its Plan and Disclosure Statement. Moreover, the Supplemental Hinkelman Declaration establishes that he believes the KEIP has provided an "important and motivating tool" for pushing the reorganization agenda *and ensuring compliance with the Budget*.

Last, the UST cites no cases whatsoever refuting the Motion's well-supported contention that, when analyzing section 503(c)(3) of the Bankruptcy Code, the business judgment rule supplies the applicable test. *See Motion*, p. 9, line 27 through p.12, line 2.  Nor does the UST cite a single case supporting her contention that the proper test is whether the expenditures are "actual and necessary to preserve the estate." *See Objection*, p. 8, lines 13-14.  Even so, the Debtor has made a showing that satisfies that test.

There is ample (and obvious) evidence supporting Mr. Hinkelman's opinion that the funds devoted to the Incentive Payments will provide a real benefit to the Debtor's estate.  First, compliance with the Budget is a gating item for all that follows in this bankruptcy case, specifically including MIHI's willingness to fund the entire reorganization effort, including professional fees for the Debtor and the Committee, as well as funding the operational losses of the Debtor's business and providing the liquidity necessary to keep the business moving forward.  There is nothing theoretical or tangential about these benefits; they are direct and irrefutable.  Second, reaching the point of either a confirmed plan or 363 sale provides additional tangible benefits, such as the preservation of jobs, the cure and assumption of contracts that would otherwise add millions of dollars of unsecured claims to the claims pool, and the performance of the Bankruptcy Rule 9019 bargain struck by the Debtor, Committee, and MIHI that creates $600,000 (and potentially three times that amount) of certain cash benefit to general unsecured creditors.

## CONCLUSION

This chapter 11 case is moving on an accelerated timeline. There are many moving parts, and no room for error. Complying with the Budget, meeting the DIP milestones, and reorganizing (not liquidating) this business in less than four months requires substantial dedication and effort by the Debtor's non-insiders as well as senior management to a process that was entirely foreign to them prior to the Petition Date.

All the evidence presented supports the conclusion that the Board's prepetition decision to implement the KERP for non-insiders was a good decision. Similarly, that same evidence shows that the board's business judgment has been validated and that the KEIP presents multiple tangible benefits to the estate.

Dated: November 5, 2015

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ John D. Fiero*
John D. Fiero
Debra I. Grassgreen
John W. Lucas
Jason H. Rosell

Attorneys for Debtor

# SUPPLEMENTAL DECLARATION OF ANDREW HINKELMAN

I, Andrew Hinkelman, declare:

1. I am the Chief Restructuring Officer of NewZoom, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), and a principal of FTI Consulting ("FTI"). The following is true of my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. As an initial matter, it was the Debtor's board of directors that voted prepetition to adopt the KEIP and the KERP. In addition, none of the Eligible KERP Employees are among the Debtor's senior management, nor are they (or have they ever been) directors of the Debtor.

3. It is my opinion that the Eligible Employees have undertaken substantial additional responsibility in this chapter 11 case. That responsibility includes managing the going-forward cash and expenses of the Debtor in a way which does not violate the Budget, to say nothing of the need to re-assess (and in many cases renegotiate) more than 1,000 prepetition contracts to which the Debtor is a party, all of which was required to be done after a substantial reduction in force undertaken by the Debtor in the early days of this case. One example of this extra burden can be found in the additional business travel required of one Eligible KEIP Employee in the midst of these reorganization efforts: two previously unscheduled trips to Europe to reinforce a nascent customer relationship, as well as a trip to Japan to address challenges occasioned by the parent company's bankruptcy case in this Court.

4. I believe the KEIP has provided an important and motivating tool for pushing the reorganization agenda and ensuring compliance with the Budget. It is also my opinion that the funds devoted to the KEIP Payments and the KERP Payments will provide a real benefit to the Debtor's estate. First, compliance with the Budget is a gating item for all that follows in this bankruptcy case, specifically including MIHI's willingness to fund the entire reorganization effort, including professional fees for the Debtor and the Committee, as well as funding the operational losses of the Debtor's business and providing the liquidity necessary to keep the business moving forward. Second, reaching the point of either a confirmed plan or 363 sale provides additional tangible benefits, such as the preservation of jobs, the cure and assumption of contracts that would otherwise

add millions of dollars of unsecured claims to the pool, and the performance of the Rule 9019 bargain struck by the Debtor, Committee, and MIHI that creates $600,000 (and potentially three times that amount) of certain cash benefit to general unsecured creditors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of November, 2015.

                              */s/ Andrew Hinkelman*
                              Andrew Hinkelman